**SIGNED THIS: July 15, 2010**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| SHREYAS HOSPITALITY, LLC, | ) | |
| | ) | Case No. 09-70523 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is a Motion to Allow Administrative Expense Claim filed by Super 8 Worldwide, Inc. ("SWI"). SWI seeks allowance of an $18,412.48 administrative expense claim for the Debtor's use of its trade name, trademarks, service marks, national reservation system, and other benefits provided through its franchise system during the pendency of this case under Chapter 11. The Debtor objects to the allowance of SWI's administrative expense claim. For the reasons set forth herein, SWI's administrative

-1-

expense claim will be allowed in the amount of the Debtor's contractual obligation to SWI for the time period in question. Further proof will be required, however, to calculate the exact amount of the administrative expense claim to be allowed.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Since 2005, Shreyas Hospitality, LLC ("Debtor") has done business as a 122-room "Super 8" motel in Springfield, Illinois. The Debtor operated the motel pursuant to an Amendment, Assignment and Assumption Agreement which it entered into on April 22, 2005, with SWI whereby it assumed a Super 8 Motel Franchise Agreement ("Franchise Agreement") originally entered into on March 6, 1987. Pursuant to the Franchise Agreement, the Debtor was authorized to use the trade name, trademarks, service marks, and national reservation system of SWI, all of which are associated with the operation of "Super 8" motels. In exchange, the Debtor agreed to

---

[1] SWI's Motion to Allow Administrative Expense Claim was filed when this case was still pending under Chapter 11. The case has now converted to Chapter 7. In addition to the allowance of its administrative expense claim, SWI had requested in its Motion that the Debtor be ordered to immediately pay over all amounts allowed. Because of the conversion, SWI now concedes that payment will be made, if at all, after all administrative expense claims have been resolved and after the Chapter 7 trustee determines the amount of funds available to pay such claims. *See* 11 U.S.C. §726(b). Accordingly, the portion of SWI's Motion which relates to its request that the Debtor be compelled to make prompt payment of any allowed administrative expense claim will not be further discussed herein.

maintain and operate the motel according to SWI's standards and to pay a monthly fee to SWI calculated as a percentage of Debtor's gross sales.

On February 27, 2009, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. At that time, a foreclosure action had been filed against the motel real estate by the Debtor's principal lender, Illinois National Bank ("INB"). Further, at the time of filing, the Debtor was in default on its monetary obligations under the terms of the Franchise Agreement with SWI. In a Motion for Relief from Stay filed on July 30, 2009, SWI alleged that the Debtor was past due for pre-petition fees in the amount of $48,738.77 and was past due for post-petition fees in the amount of $8421.72.

SWI's Motion for Relief from Stay was initially set for hearing on August 25, 2009. On that day, counsel for SWI did not appear, but Debtor's counsel represented that the parties had agreed that an evidentiary hearing would be necessary to resolve the Motion. An evidentiary hearing was set for September 22, 2009. On that date, counsel for SWI again did not appear, but Debtor's counsel represented that the parties had agreed to continue the Motion for Relief from Stay generally, and further agreed that it should be reset with hearings on the Debtor's disclosure statement and plan when those documents were filed. Subsequently, hearings on all pending matters were set for December 1, 2009.

On November 23, 2009, SWI filed an Amended Motion for Relief from Stay.  The Amended Motion alleged that, on October 8, 2009, a quality assurance audit of the Debtor's motel had occurred which disclosed numerous violations of SWI's operating standards, and asserted that these non-monetary defaults provided an additional basis for the granting of stay relief.  The Amended Motion also alleged that the post-petition monetary default by the Debtor to SWI had increased to $9192.99 as of November 6, 2009.  The Amended Motion was set with the other pending matters for the previously scheduled December 1st hearing date.

On December 1, 2009, counsel for SWI appeared in prosecution of the Motion for Relief from Stay and the Amended Motion.  She asserted that the non-monetary defaults were serious and requested a prompt evidentiary hearing on the Amended Motion.  A hearing was set for December 9, 2009, for the presentation of evidence on the issues raised by the quality assurance audit.  On December 4, 2009, however, SWI filed an Emergency Motion to Bifurcate Hearing and therein requested that the Court rule on a legal issue raised by the original Motion for Relief from Stay before taking evidence on the alleged non-monetary defaults.  The Court granted the Emergency Motion in part and entered an order limiting the scheduled December 9th hearing to legal arguments.

On December 9th, the parties presented legal arguments regarding whether SWI was entitled to immediate relief from stay as

a matter of law by reason of SWI's assertion that the Franchise Agreement was, on its face, non-assignable and, therefore, was also non-assumable by the Debtor.  SWI relied on a line of cases which require use of a hypothetical test and hold that a debtor-in-possession may not assume an executory contract over objection if applicable law bars the assignment of the contract even when such assignment is not contemplated.  *See, e.g.*, In re Catapult Entertainment, Inc., 165 F.3d 747 (9th Cir. 1999), *cert. dismissed* 528 U.S. 924, 120 S.Ct. 369 (1999); In re James Cable Partners, L.P., 27 F.3d 534 (11th Cir. 1994); In re West Electronics, Inc., 852 F.2d 79 (3rd Cir. 1988).  SWI argued that, because the Franchise Agreement was a personal service agreement, it was non-assignable under applicable law.  Thus, according to SWI and the cases upon which it relied, the Franchise Agreement became non-assumable by the Debtor and SWI was entitled to relief from stay as a matter of law.

Debtor countered that a second distinct line of cases, albeit bankruptcy court rather than circuit court cases, exists which provides contrary authority.  *See, e.g.,* In re Footstar, Inc., 323 B.R. 566 (Bankr. S.D. N.Y. 2005); In re Adelphia Communications Corp., 359 B.R. 65 (Bankr. S.D. N.Y. 2007); In re Aerobox Composite Structures, LLC, 373 B.R. 135 (Bankr. D. N.M. 2007).  The cases cited by the Debtor rely on an actual rather than hypothetical test and support the proposition that a debtor is not prohibited as a

matter of law from assuming an executory contract solely on the basis that the contract is non-assignable.

After hearing the arguments and reviewing all of the cited cases, this Court held that SWI was not entitled to immediate relief from stay.  This Court found the reasoning of <u>Adelphia Communications</u> persuasive and found that the use of an actual rather than hypothetical test was required by the plain meaning of the statute.  *See* 11 U.S.C. §365(c).  As no motion to assume or reject, or to compel assumption or rejection, had yet been filed by either party, SWI was not entitled to immediate relief from stay based on a hypothetical analysis of what the outcome of any such motion might be if it were filed.  This Court also discussed with the parties SWI's contention that the Franchise Agreement would expire on its own terms on April 22, 2010.  Because the Franchise Agreement, at least on its face, appeared to support that contention, the Court questioned the efficiency of spending a great deal more time and money on contested hearings if there would soon be nothing left to assume, reject, or assign in any event. Nevertheless, the parties requested a further evidentiary hearing, and one was set for January 28, 2010.

On January 21, 2010, SWI filed a Motion to Continue the January 28th evidentiary hearing.  In the Motion to Continue, SWI asserted that the attorneys for all parties had conferred and agreed to request that all pending motions of both SWI and INB be

continued to February 23, 2010, when other matters in the case, including approval of the Debtor's Amended Disclosure Statement, were already set.  The Motion to Continue was granted.  On February 23rd, the Debtor withdrew its Amended Disclosure Statement and reported that an agreed order would be submitted allowing relief from stay for INB effective April 1, 2010.  The Debtor had not, however, resolved its issues with SWI and, therefore, another hearing was set for March 4, 2010.

On March 2, 2010, SWI filed a Motion to Continue the March 4th hearing and represented that settlement with the Debtor was close.  The hearing was reset for March 16th.  Prior to that date, an agreed order was submitted by SWI and the Debtor granting relief from stay to SWI to exercise its rights to terminate the Franchise Agreement.

On March 23, 2010, INB filed an Amended Motion to Convert the case to Chapter 7 alleging continuing diminution of the estate.  Hearing on that motion was set for April 27, 2010.  SWI filed its Motion to Allow Administrative Expense Claim on March 30, 2010, which was then also set for April 27th.  On April 27th, in the absence of objection by the Debtor, the Amended Motion to Convert was granted.  Because of the conversion and impending appointment of a Chapter 7 trustee, SWI's Motion was continued to allow the soon-to-be-appointed trustee an opportunity to review the Motion.

Further hearing on the Motion to Allow Administrative Expense Claim was held on June 3, 2010.  At that time, the Chapter 7

trustee raised no objection to the Motion but the Debtor did raise an objection.[2]  Because the issues raised appeared to be principally legal rather than factual, a short briefing schedule was set.  All briefs have now been filed.

## LEGAL ANALYSIS

After notice and a hearing, an administrative expense claim may be allowed for the actual and necessary costs and expenses of

---

[2] Although SWI did not raise the issue of the Debtor's standing to object to its Motion to Allow Administrative Expense Claim, the Debtor's standing to weigh in on the Motion is questionable. Standing in bankruptcy cases is a narrow concept and, to have standing to object to the entry of a bankruptcy court order, a person must have a "pecuniary interest in the outcome of the proceedings."  See In re Cult Awareness Network, Inc., 151 F.3d 605, 607 (7th Cir. 1998); In re Ray, 597 F.3d 871, 874 (7th Cir. 2010). Debtor no longer has any pecuniary interest in the outcome of this case. There is no expectation that a surplus will exist at the end of the case which might be distributed to the Debtor and thus give the Debtor a continuing pecuniary interest in the case. To the contrary, the Debtor's attorney has suggested that the case may be administratively insolvent.  Thus, it is actually the Debtor's principals, Chi Suresh and Gayathri Suresh, and the Debtor's attorney, Jeffrey D. Richardson, who object to SWI's Motion. These individuals all have their own applications for the allowance of administrative expense claims pending and, therefore, each has a pecuniary interest in the outcome of the case and in the outcome of SWI's Motion in particular. If insufficient funds are obtained by the Chapter 7 trustee from the liquidation of the Debtor's unencumbered assets to pay all administrative expenses, a *pro-rata* distribution will be made. Defeating or diminishing SWI's claim will potentially yield a higher distribution to Mr. and Mrs. Suresh and Mr. Richardson. Because the Debtor lacks standing here, its objection could simply be denied. However, that might well result in a similar objection being raised by the real objectors. As they are the persons who have raised and briefed the issue for the Debtor, they will be bound by the Court's decision here. Therefore, for the sake of judicial economy, this Court will proceed to decide the pending issues with the Debtor remaining as the nominal objector.

preserving an estate. *See* 11 U.S.C. §503(b)(1)(A). Generally, an allowed administrative expense must arise from a transaction with the debtor-in-possession which conferred some benefit on the estate. *See* In re H.L.S. Energy Co., Inc., 151 F.3d 434, 437 (5th Cir. 1998); In re Vantage Investments, Inc., 328 B.R. 137, 142 (Bankr. W.D. Mo. 2005). Administrative expenses are granted priority payment status in order to encourage third parties to continue to do business with Chapter 11 debtors and, thereby, to facilitate the business operation and "to provide the best possible opportunity for a successful rehabilitation which will ultimately redound to the benefit of all creditors." In re Colortex Industries, Inc., 19 F.3d 1371, 1377 (11th Cir. 1994). The goal of encouraging entities to do business with debtors must, however, be balanced with the presumption that most debtors have limited resources. Accordingly, the priorities of §503 must be narrowly construed, and the burden is on the claimant to establish that an administrative expense claim should be allowed. *See* In re Kmart Corp., 290 B.R. 614, 621 (Bankr. N.D. Ill. 2003).

It is not disputed that, during the pendency of this case under Chapter 11 and until SWI finally obtained stay relief in March 2010, the Debtor continued to operate as a "Super 8" motel and retained all of the benefits of the Franchise Agreement including participation in SWI's national reservation system. Further, the Debtor continued to use the trademarks and service

marks of SWI for its signage and advertising.  As SWI points out, courts which have considered whether the use of trademarks, service marks, or the other benefits of franchise or licensing agreements by a debtor or trustee may support the allowance of an administrative expense claim have held that such claims should be allowed.  *See, e.g.,* In re B-K of Kansas, Inc., 82 B.R. 135 (Bankr. D. Kan. 1988), *aff'd* 99 B.R. 446 (D. Kan. 1989); In re Beverage Canners International Corp., 255 B.R. 89 (Bankr. S.D. Fla. 2000); In re Home Interiors & Gifts, Inc., 2008 WL 4772102 (Bankr. N.D. Tex. Oct 9, 2008).  Continued use or the opportunity to continue to use all of the benefits of a franchise or licensing agreement provides sufficient value and benefit to an estate to justify the allowance of an administrative expense claim.  *See* Beverage Canners, 255 B.R. *at* 93; Home Interiors, 2008 WL 4772102 *at* *7.

The Debtor attempts to distinguish the case law cited by SWI by asserting that the cases require that the Debtor must have distributed goods using the trademark and placed such goods in the stream of commerce in order to qualify for an administrative expense claim.  It is true that the use of a trademark in commerce sufficient to support an administrative expense claim occurs with respect to goods when the goods are affixed with the trademark and placed in the stream of commerce.  15 U.S.C. §1127.  But, the use in commerce of a trademark with respect to services occurs when "it is used or displayed in the sale or advertising of services and the

-10-

Case 09-70523   Doc 226   Filed 07/15/10   Entered 07/15/10 09:46:33   Desc Main
                         Document      Page 11 of 14

services are rendered in commerce[.]" Id. SWI asserts, and the Debtor does not deny, that the trade name, trademarks, and service marks of SWI associated with the operation of a "Super 8" motel were used by the Debtor in signage, in phone book and internet advertising, and by its participation in the national reservation system. Thus, it is clear that the Debtor actually used the trade name, trademarks, and service marks of SWI in the sale and advertising of its motel services which were rendered in commerce. The Debtor's use of the trade name, trademarks, and service marks of SWI justifies SWI's request for the allowance of an administrative expense claim.

Debtor also objects to SWI's request for allowance of an administrative expense claim on the basis that the amount due under the terms of the Franchise Agreement for the time period in question should not determine the amount of any allowed claim. Debtor suggests that the claim should only be allowed for "limited and definable service like use of Super 8's reservation system." Debtor does not explain how its use of the national reservation system which, presumably, one would reach by searching the internet or another directory source using the "Super 8" name could be considered as anything other than a use of such trade name. Debtor received reservations through the national reservation system because Debtor assumed the Franchise Agreement and was authorized to operate as a "Super 8" motel. Throughout the Chapter 11 case,

the Debtor never sought to reject the Franchise Agreement or to surrender any of the benefits it derived from the use of the "Super 8" trade name, trademarks, or service marks.  The suggestion now that the Debtor could have participated in the national reservation system and received the benefits of that system without actually using the "Super 8" trade name, trademarks, or service marks is simply not supported by the facts of this case.

The amounts due pursuant to the terms of the Franchise Agreement for the period of time the Debtor operated the "Super 8" motel under Chapter 11 is the proper measure of the amount that should be allowed as SWI's administrative expense claim.  *See* Beverage Canners, 255 B.R. *at* 93; Home Interiors, 2008 WL 4772102 *at* *10.  The Debtor made a voluntary, arms-length agreement with SWI which set the value and price to be paid for the benefits to be received pursuant to the Franchise Agreement.  Debtor had full use of all such benefits during the Chapter 11 and, therefore, received the full benefit of its bargain and SWI should be compensated accordingly.  *See* Beverage Canners, 255 B.R. *at* 93.  SWI need not prove that the Debtor actually profited from the use of the Franchise Agreement.  "Benefit" in the context of an administrative expense claim is akin to "use" not "profit."  *See* In re Patient Education Media, Inc., 221 B.R. 97, 103 (Bankr. S.D. N.Y. 1998).

Debtor's final argument is that it disagrees with the amount of SWI's claim.  Debtor cites no specifics of its disagreement but,

-12-

at the same time, SWI did not present a detailed calculation of its claim.  It claims that $18,412.48 is due and that the amount was calculated by using the payment terms of the Franchise Agreement applied to the Debtor's gross income figures as shown on Debtor's monthly Chapter 11 operating reports.  As this issue raises a question of fact rather than of law, it cannot be resolved on the briefs already submitted.  Rather than setting an evidentiary hearing at this time, however, SWI will be required to supplement its Motion for Allowance of Administrative Expense Claim with a detailed calculation of its claim, and the Debtor will be given an opportunity to review and respond to the supplemented information.  If a factual dispute remains, an evidentiary hearing will be scheduled.

## CONCLUSION

SWI filed its Motion for Relief from Stay early in the case but then sought and received a number of continuances of the hearings scheduled on the Motion.  While in Chapter 11, the Debtor never sought to reject the Franchise Agreement and never did anything to stop SWI's meter from continuing to run.  The Debtor admittedly continued to use the trade name, trademarks, service marks, and national reservation system of SWI and, having received all that it was entitled to receive under the Franchise Agreement, cannot now object to SWI being allowed an administrative expense claim for what

it was entitled to receive under the same contract.  All that remains to be determined is the exact amount due to SWI.  For these reasons, SWI's Motion for Allowance of Administrative Expense Claim is granted and the claim will be allowed in the amount contractually due for the time period during which the Debtor operated as a "Super 8" motel while in Chapter 11.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###